**Henry L. WALTHER, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**Civ. A. Nos. 78–2097, 78–2193.**

United States District Court, District of Columbia.

April 17, 1979.

See also, D.C., 82 F.R.D. 200.

Alan P. Dye, N. MacKenzie Canter, III, Webster & Chamberlain, Washington, D. C., for plaintiff.

William C. Oldaker, Charles N. Steele, Lawrence M. Noble, Deborah McFarland, Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on the defendant's motion to dismiss for failure to

state a claim. Henry Walther, a registered voter residing in Virginia, brings these two consolidated actions pursuant to 2 U.S.C. § 437g(a)(9); he alleges that the defendant Federal Election Commission ("FEC" or "the Commission") acted contrary to law in dismissing 45 complaints which he filed with the FEC pursuant to 2 U.S.C. § 437g(a)(1). In essence, each complaint asserted that either a candidate for federal office or his campaign committee had violated 2 U.S.C. § 441a(f) by knowingly accepting contributions in excess of the $5,000 ceiling established in 2 U.S.C. § 441a(a)(2)(A). The alleged violation occurred when either the candidate or his committee accepted contributions from both the AFL–CIO political committee and the political committees set up by unions which are members of the AFL–CIO.[1] Plaintiff claims that the political committee sponsored by the AFL–CIO and some committees of member unions are subject to the same control and, therefore, their separate contributions should be regarded, under 2 U.S.C. § 441a(a)(5), as *one* donation. Moreover, plaintiff asserts, the recipients of the contributions were aware of this relationship.

The FEC claims that, as a matter of law, section 441a(a)(5) could *never* apply to the political committees of the AFL–CIO and its member unions. Thus, the Commission concludes, no violation could ever arise out of a candidate's acceptance of contributions from these two political committees. Relying primarily on this interpretation of the

Federal Election Campaign Act of 1971, the FEC has filed this motion to dismiss. Because this Court is unable to accept the Commission's reading of the relevant statute, the FEC's motion must be denied.

## I. BACKGROUND.

The Federal Election Campaign Act of 1971, as amended, 2 U.S.C. §§ 431–455 ("the Act"), is designed to curb the appearance of influence buying among federal candidates, without impinging upon the first amendment interests delineated in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).[2] To achieve this goal, the Act places limitations on the size of the contributions[3] which any individual or political committee[4] can give to a candidate during an election campaign.[5] Individuals can donate no more than $1,000 per campaign and political committees, which represent a bona fide pooling of the resources of individuals, are limited to $5,000. 2 U.S.C. §§ 441a(a)(1)(A) & (a)(2)(A) (1976).

In addition, the Act contains provisions which place tight controls on the political activities of corporations and labor organizations. Although section 441b(a) prohibits contributions by corporations as well as labor unions, these organizations are permitted to establish "separate segregated funds," which are supported by voluntary contributions, and these funds may be distributed to federal candidates.[6] 2 U.S.C. § 441b(b)(2)(C) (1976). The committee which solicits for and distributes these

1. Because the Court is presented with a motion to dismiss, it must assume that the facts which plaintiff alleges are correct. Of course, this hypothetical treatment of the issues raised in plaintiff's complaint can in no way be construed as suggesting that any individual or organization has engaged in improper conduct.

2. For a thorough discussion of the contours of the present federal election law, see Note, Election Law: Regulation of Campaign Financing, 1976 *Ann.Survey Am.L.* 649.

3. The term "contribution" is defined at 2 U.S.C. § 431(e) (1976).

4. Under the Act, there are two types of political committees. For the purposes of disclosing financial activity, the term is construed broad-

ly. 2 U.S.C. §§ 431(d) & 433(a) (1976). Yet, in determining which groups are eligible to contribute up to $5,000, a more narrow definition is employed. 2 U.S.C. §§ 441a(a)(2)(A) & (a)(4) (1976). This second type of political committee is called a "multicandidate political committee" and it is in this sense that the Court employs the term "political committee."

5. Political campaigns are defined as "elections," at 2 U.S.C. § 431(a) (1976).

6. For an excellent discussion of corporate and union political activity, see Epstein, Corporations and Labor Unions in Electoral Politics, 425 *Annals* 33 (May 1976).

funds is commonly called a "political action committee" (PAC).[7] The issue in this case concerns the relationship between the AFL–CIO's political committee, known as the Committee on Political Education ("COPE"), and the PAC's of unions belonging to the AFL–CIO ("union PAC's").

In addition to controlling the political activities of corporations, labor organizations and their PAC's, the Act also permits private citizens to play a role in the enforcement of the election laws. Under 2 U.S.C. § 437g(a)(1), individuals are allowed to file complaints with the FEC and the Commission must investigate the matter "if it has reason to believe that any person has committed a violation" of the Act. 2 U.S.C. § 437g(a)(2) (1976).

On October 30, 1978, and on November 7, 1978, the plaintiff alleges that he filed a total of forty-five sworn complaints with the FEC. Complaint No. 78–2097, ¶ 6 (filed November 3, 1978); Complaint No. 78–2193, ¶ 6 (filed November 21, 1978). The impropriety alleged in plaintiff's complaints rests primarily on two propositions: (1) a construction—which the FEC has rejected—of 2 U.S.C. § 441a(a)(5), the "anti-proliferation" statute; and (2) that candidates or their committees were *aware* that a violation had occurred.[8] *See* 2 U.S.C. § 441j (1976).

Section 441a(a)(5) is designed "to prevent corporations, labor organizations, or other persons or groups of persons from evading the contribution limits." H.R.Rep.No. 1057, 94th Cong., 2d Sess. 58, U.S.Code Cong. & Admin.News, pp. 929, 973 (1976) (hereinafter, "H. Conference Rep."). The statute provides in pertinent part:

> For purposes of the limitations provided by [2 U.S.C. §§ 441a(a)(1) & (2)], all contributions made by political commit-

tees established or financed or maintained or controlled by any corporation, labor organization, or any other person, including any parent, subsidiary, branch, division, department, or local unit of such corporation, labor organization, or any other person, or by any group of such persons, shall be considered to have been made by a single political committee. . . . In any case in which a corporation and any of its subsidiaries, branches, divisions, departments, or local units, or a labor organization and any of its subsidiaries, branches, divisions, departments, or local units establish or finance or maintain or control more than one separate segregated fund, all such separate segregated funds shall be treated as a single separate segregated fund for purposes of the limitations provided by [2 U.S.C. §§ 441a(a)(1) & (2)].

In its first clause, section 441a(a)(5) establishes a general rule for all political committees. In essence, it provides that contributions from separate PAC's which are "established or financed or maintained or controlled"[9] by the same person or the same group of persons, shall be considered to have been made by a single PAC. Thus, together, the two PAC's may not contribute in excess of $5,000. Without this antiproliferation device, the contribution ceiling would be meaningless: a single group could merely set up several PAC's and multiply its contributing power accordingly.

In its last clause, section 441a(a)(5) specifically addresses the difficulties created by the relationship between a union and its locals. The statute establishes a *per se* rule for the PAC's formed by these closely related organizations and under this rule, when a "labor organization" and one of its locals each finance or control a PAC, the two committees "*shall* be treated as a *single*

---

7. The terms "political committee" and "PAC" are used throughout this opinion as a shorthand for the statutory term "multicandidate political committee." 2 U.S.C. § 441a(a)(4) (1976); see note 4 *supra*.

8. Significantly, the plaintiff's complaints to the FEC do not assert that the unions or the AFL–CIO violated the Act by knowingly making ille-

gal contributions. The violation alleged by the plaintiff occurred when candidates or their committees accepted the contribution with knowledge of its illegality.

9. For the sake of convenience, this statutory phrase will be referred to, throughout this opinion, as "controlled."

separate segregated fund for purposes of the limitations" on campaign contributions. (emphasis added). A similar *per se* rule governs the relationship between the PAC's of corporations and their subsidiaries.

## II. THE PROPER INTERPRETATION OF 2 U.S.C. § 441a(a)(5) REQUIRES THE DENIAL OF THE FEC'S MOTION TO DISMISS.

■ The central question presented by the Commission's motion to dismiss is one of statutory construction. The Court must determine the correct application of section 441a(a)(5) to the alleged relationship between COPE and the PAC's of unions which are members of the AFL–CIO. The FEC contends that, as a matter of law, regardless of the extent of COPE's control over a member PAC—or some group's control over both COPE and a union PAC—the two committees can *never* be treated as a single PAC under 2 U.S.C. § 441a(a)(5). Thus, the FEC concludes, plaintiff has not alleged a violation of the Act when he claims that COPE controls the PAC's of member unions. After examining both the language of the statute and the policy underlying the Act, the Court cannot accept the Commission's interpretation.

To start, the standard of review which the Court must apply on a motion to dismiss is well settled. In *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the Supreme Court explained that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In reviewing the face of the instant complaint, the Court finds its allegations sufficient to entitle the plaintiff to relief.

### A. *The Ambit of Section 441a(a)(5).*

■ " 'The starting point in every case involving the construction of a statute is the language itself.' " *International Brotherhood of Teamsters v. Daniel,* —— U.S.

——, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979). The Court has found nothing in the language of section 441a(a)(5) to support the proposition that certain persons or PAC's were intended to be *excluded* from its scope. The statute's terms are intentionally broad; they extend to political committees controlled by "any other person . . . or by *any group of such persons*" (emphasis added). The definition of "person" includes "an individual . . . a committee . . . or group of persons." 2 U.S.C. § 431(h) (1976). The meaning of the law is plain: if two or more PAC's are controlled by one person or one group of persons, then the PAC's should be treated as *one* PAC for the purposes of controlling political contributions. Moreover, the statute provides no exemption based on the special relationship between a union and organization like the AFL–CIO.[10]

The statute's *per se* proviso regarding corporate and labor PAC's merely enacts an *inclusionary* rule. Under the last clause of section 441a(a)(5), the PAC's of a labor organization and its local, or of a corporation and its subsidiaries, are *automatically* treated as one PAC. Proof of control, therefore, is unnecessary. Certainly, this inclusionary rule cannot support the proposition that union PAC's and COPE are *exempt* from the anti-proliferation statute. Moreover, this inclusionary rule is clearly not the sole standard applicable to COPE and union PAC's. Common sense dictates that the remainder of the statute must also apply.

In sum, the Commission has not pointed to one word in section 441a(a)(5) which supports its interpretation: the FEC's motion to dismiss does not even bother to quote the law. The Court can only conclude that the statute's phrase "any group of . . . persons" was intended to include a group which might comprise either COPE and union PAC's or individuals controlling them.

### B. *The Legislative History.*

In construing the relationship between COPE and union PAC's as exempt from

---

**10.** Section 441a(a)(5) contains three express exemptions which exclude certain types of activity from the anti-proliferation statute's rule of attribution. None of these exemptions are relevant to this case. *See* 2 U.S.C. § 441a(a)(5)(A), (B) & (C) (1976).

section 441a(a)(5), the FEC relies on the legislative history of the statute. In particular, the Commission points to the remarks of Senator Cannon, Senate floor manager during the debates on the 1976 amendments to the Act. During his discussion of the anti-proliferation law, Senator Cannon explained:

> I would like to illustrate this third exception by using an example which was referred to us during our committee deliberations. The proposed rule to curtail the vertical proliferation of political committee contributions would not preclude a national union through its political committee, such as for example, the boilermakers, from making a maximum contribution to a candidate through its national political committee in the event that COPE, the political committee of the AFL–CIO, with which the boilermakers are affiliated, has already made its maximum contribution to that candidate. On the other hand, the proposed rule would prevent the various local unions of the boilermakers from making a similar maximum contribution through their local political committees when such a maximum contribution has already been made from the national political committee of the boilermakers.

122 Cong.Rec. 6694 (March 16, 1976) (quoted in Defendant's Memorandum of Law at 6 (filed Jan. 26, 1979)). The FEC interprets the Senator's remarks to mean that *under no circumstances* could the boilermaker PAC ever be considered, for the purposes of section 441a(a)(5), the same political committee as COPE.

The Commission also relies on the House Conference Report which states:

> 2. All of the political committees set up by a single international union and its local unions are treated as a single political committee.
>
> 3. All of the political committees set up by the AFL–CIO and all its State and local central bodies are treated as a single political committee.

H.Conference Rep., *supra,* at 58, U.S.Code Cong. & Admin.News, p. 973. After an extensive review of the relevant indicia of congressional intent, the Court finds that it cannot accept the Commission's reading of the legislative history.

First, the Commission's reliance on the House Conference Report is clearly misplaced. Indeed, the portion of the Report which the FEC emphasizes is quoted out of context. The two rules quoted by the Commission are complemented by three other rules and together these five principles are intended to help explain the operation of the statute. The principles on which the FEC relies are clearly part of an explanation of section 441a(a)(5)'s *per se* rule: both state when two PAC's shall *always* be treated as one. Neither principle states when two PAC's must *always* be regarded as separate. Although section 441a(a)(5) clearly establishes a *per se* rule for unions and their locals as well as for the AFL–CIO and its local committees, there is no such special rule regarding the relationship between the AFL–CIO and its union members. In approaching this situation, the Court finds relevant the fifth rule of construction put forth in the House Conference Report:

> 5. The anti-proliferation rules stated also apply in case of multiple committees established by a group of persons. H.Conference Rep., *supra,* at 58.

Under this rule, section 441a(a)(5) certainly offers no special shelter for union PAC's controlled by COPE.

The FEC's reliance on the commentary of Senator Cannon is even more baffling. A cursory examination of the legislative history reveals that the Senator was discussing a specific exemption *which was never enacted by Congress.* The FEC has treated his remarks as if they were relevant to the *final* version of section 441a(a)(5); the Commission has failed to explain how, in light of subsequent changes by the House and Senate, the Senator's views might still aid the interpretation of the law.

At the time Senator Cannon offered the example of the relationship between the AFL–CIO and the boilermakers' PAC as an exception to the anti-proliferation provi-

sion, he was discussing section 11 of S. 3065, 94th Cong., 2d Sess. (1976). *See* 122 Cong. Rec. 6694 (March 16, 1976). Under the Senate bill, a specific exemption was created in order to avoid precluding:

> a political committee of a national organization from contributing to a candidate or committee merely because of its affiliation with a national multicandidate political committee which has made the maximum contribution

. . . . .

122 Cong.Rec. 6694 (March 16, 1976) (remarks of Sen. Cannon). *See generally* S.Rep.No. 677, 94th Cong., 2d Sess. 37–38, U.S.Code Cong. & Admin.News, p. 929 (1976) (Senate version of the bill; pertinent provision to have been codified as § 439d(a)(2)(C)); H.Conference Rep., *supra,* at 53–54 (discussing Senate version of the bill). After the Senate bill was sent to conference, this exemption was deleted. The House Conference Report expressly adopted "the provision of the House Amendment" and this provision, not the one discussed by Senator Cannon, became section 441a(a)(5). H.Conference Rep., *supra,* at 58. As the Court has already explained, the broad language of the Conference version does not provide any support for the FEC's reading of the statute.

### C. *The FEC Regulations.*

Finally, the Commission offers its own regulations as support for the proposition that the AFL–CIO and its union members are not subject to the anti-proliferation statute. Yet, in calling the Court's attention to 11 C.F.R. §§ 110.3(a)(1)(ii)(B) & (C) (1978), the FEC has overlooked their plain meaning. These provisions restate, in large part, the House Conference Report, supra, at 58. As a result, sections 110.3(a)(1)(ii)(B) & (C) of title 11, C.F.R., merely declare the circumstances under which two PAC's will always be treated as one. Neither provision addresses the issue before the Court— when two political committees may *never* be treated as one. After examining the Commission's regulations, the Court has found nothing to support the FEC's position. Indeed, the relevant regulation,

which is couched in the broad language of section 441a(a)(5), is clearly contrary to the FEC's view of the relationship between COPE and the union PAC's. It states:

> All of the political committees set up by the same group of persons are treated as a single political committee.

11 C.F.R. § 110.3(a)(1)(ii)(E). Thus, as the plaintiff argues, if COPE and some union PAC's are controlled by the same group of persons, then they should be regarded as one political committee.

### D. *Conclusion.*

The FEC's contention that section 441a(a)(5) does not reach COPE's control of a union PAC—or a group of persons's control of both—is without merit. The Court finds that the ambit of the statute reaches *all* political committees which are controlled by one person or by a group of persons, except those specifically exempted. *See* 5 U.S.C. §§ 441a(a)(5)(A), (B) & (C) (1976) (creating exemptions not relevant to the present case). Thus, the Court concludes that the relationship alleged in plaintiff's complaint may constitute a violation.

### III. PLAINTIFF HAS PLED ALL THE ELEMENTS OF A CLAIM UNDER 2 U.S.C. § 437g(a)(9).

The FEC raises two other objections to plaintiff's complaint. First, it contends that because the FEC has publicly construed section 441a(a)(5) to exclude cooperation between COPE and union PAC's, no candidate could ever knowingly violate the statute by accepting contributions from both. *See* 2 U.S.C. § 441j (1976). Second, the Commission asserts that, under *Hampton v. FEC,* 580 F.2d 701 (D.C. Cir. July 21, 1978), the plaintiff has not provided evidence which merits an investigation. Both contentions are groundless.

First, the FEC cites no precedent to support the proposition that, as a matter of law, an incorrect administrative interpretation *precludes* either a criminal or civil violation. Although the agency's interpretation may be a factor in assessing whether

a party acted "knowingly," its reading cannot be used *de facto* to re-write the statute. This is especially true when, as under the Federal Election Campaign Act, Congress has granted a private right of action capable of filling gaps in the agency's enforcement policy. 2 U.S.C. § 437g(a)(9)(C) (1976) (private parties may bring civil actions when the FEC fails to promptly comply with a Court order to prosecute). To grant the FEC the authority to "interpret" the law, publicize that interpretation and thereby afford individuals absolute immunity, could be tantamount to permitting the ingenious to aid the disingenuous.[11] Plaintiff has alleged that the candidates *knowingly* violated the Act and under *Conley v. Gibson, supra,* this pleading is sufficient.

The FEC's assertion that plaintiff's allegations do not, as a matter of law, merit an investigation is equally insufficient. On a motion to dismiss, the Court is not permitted to evaluate the plaintiff's proof. Plaintiff asserts that, in light of the available evidence, the Commission acted contrary to law in dismissing his complaint without an investigation. Because the plaintiff has sketched out the elements of a violation, his allegation of FEC error has satisfied the test for notice pleading.

This result is in full accord with *Hampton v. FEC,* 580 F.2d 701 (D.C. Cir. July 21, 1978). In *Hampton,* the FEC actually conducted an investigation, but the plaintiff claimed that this investigation was insufficient in scope. The Court of Appeals merely held that plaintiff's complaint did not state facts which, on their face, rendered contrary to law the FEC decision to terminate the investigation. Here just the opposite has occurred. Plaintiff has claimed that a violation occurred and alleged further that the FEC, without conducting any investigation, has found that the information presented by the plaintiff does not merit its attention. This Court merely holds that the facts alleged by the plaintiff constitute a violation and, in addition, that

plaintiff's allegations of FEC inactivity describe administrative decisions which are contrary to law. Of course, nothing in this opinion can be construed as concluding that a violation has in fact occurred or that the FEC has actually failed to perform its statutory task.

## IV. CONCLUSION

In sum, the plaintiff has successfully pleaded the basic elements of a cause of action under 2 U.S.C. § 437g(a)(9): (1) that a specific violation has occurred; (2) that a proper complaint has been filed with the FEC; and (3) that the FEC acted contrary to law in refusing to investigate the complaint. Accordingly, the defendant's motion to dismiss must be denied.

An order in accordance with the foregoing will be issued of even date herewith.

---

11. The Court's decision to reject this argument is further supported by the FEC's failure to point to any rule, advisory opinion, or other published form of notice which supports its interpretation of section 441a(a)(5).