**In re FEDERAL ELECTION CAMPAIGN ACT LITIGATION.**

**M.D.L. Docket No. 372. Misc. No. 79–0136 (Civil Action Nos. 78–2097, 78–2193).**

United States District Court, District of Columbia.

June 15, 1979.

See also, D.C., 468 F.Supp. 1235; D.C., 82 F.R.D. 200.

Alan P. Dye, N. MacKenzie Canter, Washington, D. C., for plaintiff.

William C. Oldaker, Charles N. Steele, Lawrence M. Noble, Deborah McFarland, Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Plaintiff and defendant have filed cross-motions for summary judgment. In addition, the defendant has moved for an amendment to this Court's Order of April 17, 1979, 468 F.Supp. 1235 (D.D.C.1979), which would permit an interlocutory appeal under 28 U.S.C. § 1292(b). Because there are no material facts in dispute, an award of summary judgment is proper and here, in light of the patent deficiencies in plaintiff's complaints to the Federal Election Commission ("FEC" or "The Commission"), judgment must be awarded to the defendant. Of course, a finding for the Commission on summary judgment requires the denial of its request for an interlocutory appeal.

The Court's memorandum opinion of April 17, 1979, 468 F.Supp. 1235 (D.D.C. 1979) provides a complete statement of the relevant facts and thus, they need not be repeated here. The gravamen of Mr. Walther's claim is that because certain political action committees are subject to the same control, under 2 U.S.C. § 441a(a)(5), they should be regarded as *one* political committee for the purposes of the $5,000 contribution limitation imposed by 2 U.S.C. § 441a(a)(2). In denying the FEC's motion to dismiss, the Court explained that in order to resolve this case, it must determine whether the FEC acted contrary to law in dismissing the 45 complaints which Mr. Walther filed pursuant to 2 U.S.C. § 437g(a)(1). A review of both those complaints and the other information available to the Commission indicates that the FEC acted well within its discretion in declining to investigate the allegations of wrongdoing.

## I. THE COMMISSION'S FAILURE TO INVESTIGATE THE COMPLAINTS WAS NOT CONTRARY TO LAW

### A. *The Standard of Review*

■ The issue of whether a particular charge merits an investigation is a sensitive and complex matter calling for an evalua-

tion of the credibility of the allegation, the nature of the threat posed by the offense, the resources available to the agency, and numerous other factors. Congress has wisely entrusted this matter to the discretion of the Federal Election Commission and instructed the courts to interfere only when the Commission's actions are "contrary to law." 2 U.S.C. § 437g(a)(9)(C). The statute which creates the duty to investigate is 2 U.S.C. § 437g(a)(2), which provides:

> (2) The Commission, upon receiving a complaint under [2 U.S.C. § 437g(a)(1)], and if it has reason to believe that any person has committed a violation of this Act or of chapter 95 or chapter 96 of Title 26, or, if the Commission, on the basis of information ascertained in the normal course of carrying out its supervisory responsibilities, has reason to believe that such a violation has occurred, shall notify the person involved of such alleged violation and shall make an investigation of such alleged violation in accordance with the provisions of this section.

A determination of the correct standard of review is a necessary prerequisite to evaluating the propriety of the Commission's decision. In resolving this matter, the Court faces two questions: (1) what information must the Commission, and now the Court, take into account in deciding whether or not to investigate; and (2) what standard governs judicial review of Commission activity.

■ With respect to the first question, it seems clear that the Commission must take into consideration all available information concerning the alleged wrongdoing. In other words, the Commission may not rely solely on the facts presented by the sworn complaint when deciding whether to investigate. Although the facts provided in a sworn complaint may be insufficient, when coupled with other information available to the Commission—gathered either through similar sworn complaints or through its own work—the facts may merit a complete in-

vestigation. By the same turn, a persuasive and strong complaint may not merit an investigation because the Commission possesses reliable evidence indicating that no violation has occurred. Thus, it is clear that a consideration of all available material is vital to a rational review of Commission decisions. In addition, section 437g(a)(2) envisions this broad examination of all evidence available to the Commission. Its language provides that the Commission must investigate a sworn complaint "if it has reason to believe that any person has committed a violation" of the election laws; the statute's reference to the Commission's "belief" calls for the Commission to exercise its informed discretion. This discretion must be based on all the information which the FEC possesses, including the individual sworn complaint, other sworn complaints, and facts which the FEC has ascertained in the normal course of carrying out its supervisory responsibilities.

■ With respect to the second question, it seems equally clear that the Court must test the Commission's decision according to the standard commonly applied to judicial review of administrative decisions. This standard requires the reversal of agency action which is either arbitrary or capricious. The sensitive nature of the Commission's decision certainly calls for judicial deference to the expertise of the agency which Congress has empowered to enforce the election laws. By reversing only those decisions which are arbitrary or capricious, the Court provides this deference.

Thus, the question raised by Mr. Walther's suit against the FEC is whether, in light of all the evidence available to the Commission, the decision not to investigate was arbitrary or capricious. A review of the undisputed facts of this case indicates that the decision was eminently reasonable.

B. *The Commission's Decision*

■ In the present case, the plaintiff has not shown that the Commission had before it any evidence of wrongdoing apart from

the allegations contained in the sworn complaints which he filed. Thus, in evaluating the Commission's decision, the Court may look only to the sworn complaints filed by Mr. Walther and, in doing so, it must take into account the cumulative effect, if any, of the many complaints alleging the same violation. An examination of Mr. Walther's complaints immediately reveals the serious shortcomings upon which the Commission relied in declining to investigate the named candidates and committees.

Indeed, the complaints submitted by Mr. Walther are a shambles.[1] He not only refers the Commission to the wrong statute in describing the alleged violation,[2] but he also fails to allege all of the elements necessary to constitute a violation.[3] In particular, Mr. Walther has not stated that any of the candidates or their committees *knowingly* accepted donations from separate political action committees which were subject to the same control. Moreover, he has not presented the slightest evidence that the accused parties possessed knowledge of the illicit control. His silence on this critical point is, by itself, sufficient reason not to investigate the allegation. In addition, although Mr. Walther provided the Commission with the names of the political committees which he asserted were subject to the same control, many of these committees have absolutely no connection with the labor groups that are supposedly exercising illegal control. Finally, even when the complaints state a valid charge, they do so only in the most conclusory fashion. Mr. Walther offers not a scintilla of evidence to support his assertion that the AFL–CIO's political action committee controls the contributions of the political action committees established by unions belonging to the AFL–CIO. In light of the inadequacy of Mr. Walther's complaints, the Commission's decision not to investigate was certainly neither arbitrary nor capricious.

Mr. Walther, in support of his motion for summary judgment, contends that the FEC dismissed his complaints solely because it relied upon an interpretation of 2 U.S.C. § 441a(a)(5) which this Court found improper in its order of April 17, 1979. Although the Commission concedes that it relied on this prior interpretation of this statute, it also claims that the patent inadequacies of Mr. Walther's sworn complaints were an additional factor in its decision. The Court, however, does not believe that ascertaining the specific motive underlying the Commission's decision must be outcome-determinative in this case. The issue is whether the decision not to investigate was correct and, in support of that decision, the Commission ought to be able to rely on any valid reason for declining to investigate. Thus, the specific reason offered to Mr. Walther does not put the FEC in the position of either succeeding in Court on that limited basis or conducting a lengthy, but unwarranted, investigation. As long as the decision itself is neither arbitrary nor capricious, the Court must affirm the Commission. It would be futile for the Court to compel an investigation, when the Commission has unequivocally stated that, in light of all of the information in its possession, an investigation is not

---

1. A sample of one of Mr. Walther's complaints is attached to this opinion as Appendix A. Apart from the names of the alleged violators, this complaint is identical to the other complaints which were submitted.

2. Mr. Walther's complaints asserted that the candidates had violated 2 U.S.C. § 441a(a)(2). *See* Appendix A, *infra.* Although this statute limits contributions, it does not directly regulate the conduct of those who are recipients of the contributions. Section 441a(f) of title 2 proscribes knowing acceptance of an illegal contribution.

3. Despite the shortcomings in Mr. Walther's sworn complaints, the Commission seems to have grasped the fact that he was alleging a violation of 2 U.S.C. § 441a(f) and that, as part of this violation, the candidates must have been aware of the illegal nature of the contributions. Under such circumstances, it was appropriate for the Court to find that Mr. Walther had stated a cause of action under 2 U.S.C. § 437g(a)(9). Order of April 17, 1979, 468 F.Supp. 1235 (D.D.C.1979).

warranted and when, in addition, that decision is supported by ample evidence.

In light of the foregoing, the Court shall grant defendant's motion for summary judgment and deny plaintiff's motion for the same.

## II. THE COMMISSION'S MOTION FOR AN INTERLOCUTORY APPEAL MUST BE DENIED

 Prior to moving for summary judgment, the defendant FEC had requested this Court to amend its order of April 17, 1979, in order to permit an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides for an interlocutory appeal "when an immediate appeal . . may materially advance the ultimate termination of the litigation." Because the Court grants summary judgment to the defendant, it is clear that there is no way for an interlocutory appeal to advance the termination of this case. Thus, the defendant's motion must be denied.

## III. CONCLUSION

The Court concludes that there are no material facts in dispute and that, in light of all the information available, the Commission's decision not to investigate the sworn complaints filed by Mr. Walther was neither arbitrary nor capricious. Accordingly, judgment shall be entered for the defendant.

An order in accordance with the foregoing will be issued of even date herewith.

## APPENDIX A

### COMPLAINT FILED WITH THE FEDERAL ELECTION COMMISSION

#### October 30, 1978

Pursuant to 2 U.S.C. Section 437g(a)(1) the National Right to Work Committee (NRWC) and Henry L. Walther, a federal voter and citizen of Virginia, believe that Senator Edward Brooke and Friends of Edward W. Brooke, his principle campaign committee, have violated Section 441a(a)(2)(A) of the Federal Election Campaign Act of 1971, as amended, by accepting illegal contributions in excess of the $5,000 limit, per election, from a single multi-candidate political action committee or group of such committees controlled by a common source. During the period of the 1978 elections, Senator Brooke and his political committee have accepted $27,700.00 in illegal contributions from AFL–CIO controlled PACs.

Under 2 U.S.C. 441a(a)(5), "all contributions made by a political committee established or financed or maintained or controlled by any corporation, labor organization, or any other person, including any parent, subsidiary, branch, division, department, or local unit of such corporation, labor organization, or any other person, or by any group of such persons, *shall be considered to have been made by a single political committee . . .* " (emphasis added). It is clear from the past statements of Mr. Meany and Mr. Barkan, his political staffer, that the political efforts of the AFL–CIO and its member unions, are coordinated and commonly directed in exactly the way contemplated by the statute's prohibition. The various AFL–CIO union political PACs are clearly covered by the common $5,000 limit. Their total of $27,700.00 in contributions to Senator Brooke exceeds this amount for both the primary and general elections and is thus an illegal contribution and a serious violation of the law.

The 1978 campaign has been witnessing an incredible display of organized labor's disregard for the law. The AFL–CIO treats its 14 million-member federation as one organization for the purposes of fundraising for its main PAC, COPE–PCC, for its multi-million dollar registration campaigns, for its get-out-the-vote drives, and for its massive political communications program, while on the other hand, it attempts to evade contribution limits on all its sub-PACs by treating them as separate political units. This fiction flies not only in

the face of the provision of the non-proliferation section of the law, 441a(a)(5), but it also violates one of the basic purposes of the original Federal Corrupt Practices Act, and the newer contribution limits. That is to keep the power of large monolithic units and their attendant corruption and undue influence out of the federal election process.

Big Labor's ability to promise its hand-picked candidates for federal office $20,000 or $40,000 or even $100,000 in cash per election, while all other interest groups are limited to $5,000, makes a mockery of fairness and election reform. Organized labor's use of compulsory membership dues money to channel these PAC funds and pay for their solicitation makes this practice that much more indefensible. Senator Brooke's receipt of such illegal excessive monies represents the real threat of corruption and undue influence aimed at by 2 U.S.C. Section 441a(a)(2)(A) and Section 441a(a)(5). We strongly ask the Commission to take immediate action to stop this abuse before the November 7 election. The American people deserve a Congress that is not "bought" by any special interest group.

For the ease of the Commission, we have excerpted all the contributions made by AFL–CIO union PACs to Senator Brooke for both the primary and the general election of 1978, to date. They are listed in the Appendix following.

Reed Larson, President, The National Right to Work Committee, 8316 Arlington Boulevard, Suite 600, Fairfax, Virginia 22038, and Henry L. Walther, a federal voter and citizen of Virginia, being first duly sworn both say that they have read the foregoing complaint and know the contents thereof, and that the same is true on information and belief. This complaint is not being filed on behalf of, or at the request or suggestion of, any candidate for federal office.

(s) Reed Larson

(s) Henry L. Walther

Subscribed and sworn to before me this 27th day of October, 1978.

(s) Suzanne S. Grimsky
Notary Public

My commission expires January 5, 1981.

[See following illustration.]

| NAME OF PAC | DATE | $ AMOUNT |
|---|---|---|
| AFL–CIO Cope Pol. Contributions Committee | 7/26/78 | 5,000.00 |
| Carpenters Legislative Improvement Com.—Carpenters and Joiners of America | 3/1/78 | 1,000.00 |
| Committee on Fed. Emp. Political Educ.—American Fed. of Govt. Employees | 2/28/78 | 150.00 |
| Communications Workers of America—Political Contributions Committee | 3/7/78 | 150.00 |
| Eng. Political & Education Committee—Operating Engineers Intl. Union | 3/7/78 | 1,000.00 |
| " " | 7/24/78 | 1,000.00 |
| The Committee on Political Education—Elec., Radio and Machine Workers | 1978 1st. Qtr | 600.00 |
| Laborers' Intl. Union of NA—Pol. League | 3/6/78 | 1,500.00 |
| H&RE, BIU, IIP "To Insure Progress"—Hotel, Restaurant Emp. & Bartenders | 3/6/78 | 1,000.00 |
| Intl. Ladies Garment Workers Campaign Com. | 3/13/78 | 150.00 |
| " " | 8/8/78 | 1,000.00 |
| Intl. Bro. of Elec. Workers Com. on Pol. Education | 8/21/78 | 1,000.00 |
| Firemen and Oilers Intl. Brotherhood—Political League | 8/2/78 | 300.00 |
| Pol. Action Together Pol. Com.—Painters and Allied Trades | 3/8/78 | 150.00 |
| " " | " | 150.00 |
| Pol. Educ. Fund of the Bldg. & Construction Trades Department—AFL–CIO | 3/14/78 | 500.00 |
| Railway Clerks Political League—Railway, Airline & Steamship Clerks | 3/21/78 | 1,000.00 |
| " " | 8/11/78 | 1,500.00 |
| Retail Clerks Intl. Union—Retail Clerks Intl. Asso. | 3/14/78 | 300.00 |
| Machinists Non-Partisan Political League—Machinists & Aerospace Workers | 3/6/78 | 300.00 |
| Maintenance of Way Employees—Pol. League | Feb. 78 | 300.00 |
| MEBA Political Action Fund—Marine Engineers Beneficial Asso. | 10/18/77 | 2,000.00 |
| " " | 3/6/78 | 3,000.00 |
| Political Action Fund—United Steel Workers of Amer. | 8/21/78 | 2,500.00 |
| United Transportation Union—Transportation Political Education League | Feb. 78 | 2,000.00 |
| UA Political Education Committee—Plumbing & Pipefitting Industry | 3/8/78 | 150.00 |
| TOTAL | | $27,700.00 |