**James Edward ANTOSH, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

Civ. A. No. 84–3048.

United States District Court, District of Columbia.

Dec. 21, 1984.

---

H. Richard Mayberry, Jr., Jonathan I. Epstein, Stephen M. Griffin, Law Office of H. Richard Mayberry, Jr., Washington,

D.C., Michael E. Avakian, Martha M. Poindexter, Center on Nat. Labor Policy, North Springfield, Va., for plaintiff.

Charles N. Steele, Richard B. Bader, R. Lee Andersen, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

This case, which is before the Court on cross-motions for summary judgment, was brought by the plaintiff, Mr. Antosh, pursuant to 2 U.S.C. § 437g(a)(1). Mr. Antosh claims that the Federal Election Commission's action in dismissing his administrative complaint was "contrary to law." 2 U.S.C. § 437g(a)(8). The Court agrees. The record before the Court clearly demonstrates that the Commission, in deciding to dismiss the complaint, erred in construing certain facts. The Commission's action was plainly arbitrary and capricious, or, to use the language of the Federal Election Campaign Act, "contrary to law." *Id.* The Court has today issued an order granting the plaintiff's motion for summary judgment.

## FACTS

On May 31, 1984, the plaintiff, James Edward Antosh, filed a complaint with the Federal Election Commission ("FEC" or "Commission") alleging that the Engineers Political Education Committee/International Union of Operating Engineers ("EPEC/IUOE") and Supporters of Engineers Local 3 Federal Endorsed Candidates ("SELFEC") made illegal contributions to the Tom Lantos for Congress Committee ("Lantos Committee") for the 1982 primary election for nomination to a California congressional seat. This complaint, filed pursuant to 2 U.S.C. § 437g(a)(1), alleged that EPEC/IUOE and SELFEC made contributions totalling $8,600, exceeding the $5,000 limit of 2 U.S.C. § 441a(a)(2)(A).[1] Mr. Antosh further alleged that the Lantos Com-

mittee violated 2 U.S.C. § 441a(f) by knowingly accepting the $3,600 of excess contributions from EPEC/IUOE and SELFEC, and that the Lantos Committee failed to accurately report these contributions, in violation of Commission Regulation 11 C.F.R. § 110.14(d). The complaint was designated Matter Under Review ("MUR") 1719 by the Commission.

On June 26, 1984, pursuant to 2 U.S.C. § 437g(a)(1), the Commission received responses to its notification of complaint from EPEC/IUOE and from counsel for Supporters of Engineers Local 3 Endorsed Candidates ("SELEC"), which apparently retained control of the SELFEC records pertinent to this matter. On June 28, 1984, the Commission received a response from the Lantos Committee. These responses addressed the allegations raised in the plaintiff's administrative complaint.

On July 24, 1984, the FEC general counsel submitted a First General Counsel's Report to the Commission. That report made a determination, based upon the submitted affidavit of Tom Lantos and upon a letter provided by EPEC/IUOE, that certain of the contributions had been improperly designated for the 1982 federal primary election, and that "the excessive contribution made by EPEC/IUOE and SELFEC and accepted by the Lantos Committee [was] $500." The report therefore recommended that the Commission: (1) Find reason to believe that EPEC/IUOE and Frank Hanley, as treasurer, violated 2 U.S.C. § 441a(a)(2)(A) by making an excessive contribution of $500 and violated 11 C.F.R. § 104.14 of the FEC's regulations for failure to file accurate reports with the Commission, but take no further action; (2) Find reason to believe that SELFEC and Rober Marr, as treasurer, violated 2 U.S.C. § 441a(a)(2)(A) in connection with the same contribution, but take no further action; and (3) Find reason to believe that the Lantos Committee and Katrina Lantos-Swett, as treasurer, violated 2 U.S.C.

---

1. It is undisputed that SELFEC and EPEC/IUOE are affiliates by the terms of 2 U.S.C. § 441a(a)(5). Thus, any contribution by one must be aggregated with contributions of the other to determine the amount subject to the limit in § 441a(a)(2)(A).

§ 441a(f) by accepting an excessive contribution from EPEC/IUOE and SELFEC of $500, but take no further action. The general counsel also recommended that the Commission close the file in MUR 1719.

On July 31, 1984, the Commission voted, without dissent, to follow the recommendations of the First General Counsel's Report. On August 6, 1984, the Commission notified complainant Antosh and the respondents in writing of its determinations, pursuant to 2 U.S.C. § 437g(a)(2). The file was closed by the Commission, and the complaint in MUR 1719 was dismissed.

On October 1, 1984, Mr. Antosh filed the complaint in this Court pursuant to 2 U.S.C. § 437g(a)(8)(A). In this action Mr. Antosh requests that the Court declare the Commission's action in dismissing the complaint without conducting an investigation to be contrary to law, and to direct the Commission to conform to such declaration within thirty days. *See* 2 U.S.C. §§ 437g(a)(8)(A), g(a)(8)(C).

## THE COURT MAY DECLARE THE COMMISSION'S ACTION TO BE CONTRARY TO LAW IF IT WAS ARBITRARY AND CAPRICIOUS

■ This case is brought pursuant to 2 U.S.C. § 437g(a)(8), which in relevant part provides:

> (C) In any proceeding under this paragraph the court may declare that the dismissal of the complaint … *is contrary to law*, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint.

(Emphasis supplied). As can be seen from the underscored language, a condition precedent to any court order is a determination that the Commission has acted contrary to law.

■ This section bars "arbitrary and capricious" action by the Commission. *Common Cause v. FEC*, 489 F.Supp. 738, 744 (D.D.C.1980); *In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1044,

1046 (D.D.C.1979). "[T]he Court must test the Commission's decision according to the standard commonly applied to judicial review of administrative decisions. This standard requires the reversal of agency action which is either arbitrary or capricious." *FECA Litigation*, 474 F.Supp. at 1046. Therefore, for the purposes of this section of the Act, the term "contrary to law" is interchangeable with the term "arbitrary and capricious."

■ The arbitrary and capricious "standard of review is a highly deferential one … which presumes the agency's action to be valid." *Environmental Defense Fund v. Costle*, 657 F.2d 275, 283 (D.C.Cir. 1981) (citations omitted). The Court must affirm the agency's decision if it is supported by a rational basis, "even though [the court] might otherwise disagree." *Id.* However, the Court is not required "to accept 'meekly administrative pronouncements clearly at variance with established facts.'" *Braniff Airways, Inc. v. Civil Aeornautics Board*, 379 F.2d 453, 463 (D.C.Cir.1967) (quoting *NLRB v. Morganton Full Fashioned Hosiery Co.*, 241 F.2d 913, 916 (4th Cir.1957). Factual determinations by administrative agencies "are not final and conclusive unless relevantly supported by the record—an administrative order without factual support is without due process." *Garvey v. Freeman*, 397 F.2d 600, 610 (10th Cir.1968). The Court should correct improper administrative fact-finding "if the court becomes aware, especially from a combination of danger signals, that the agency has not really taken a 'hard look' at the salient problems, and has not genuinely engaged in reasoned decision-making." *Greater Boston Television v. FCC*, 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). With these instructions in mind, the Court now applies this arbitrary and capricious standard to the Commission's actions in this case.

## THE COMMISSION'S DISMISSAL OF THIS COMPLAINT WAS ARBITRARY AND CAPRICIOUS

Mr. Antosh's complaint before the Commission alleged that EPEC/IUOE and SEL-

854

FEC violated § 441a(a)(2) of the Act. That section provides:

> No multicandidate political committee shall make contributions to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceeds $5,000.

2 U.S.C. § 441a(a)(2)(A). The complaint additionally alleged that the Lantos Committee violated 2 U.S.C. § 441a(f) by receiving contributions in excess of $5,000. These excess contributions allegedly were attributal to the 1982 primary election.

During 1981 and early 1982, EPEC/IUOE made three direct contributions to the Lantos campaign totalling $3,600. EPEC/IUOE reported these as contributions for the 1982 Lantos Committee's primary campaign, but the Lantos Committee reported two of them, totalling $3,100, as received for the retirement of a 1980 campaign deficit. In June, 1982, both SELFEC and the Lantos Committee reported a $5,000 "in-kind" contribution for the Committee's 1982 primary campaign. (This "in-kind" contribution took the form of printing costs for campaign flyers and literature by SELFEC for the Lantos Committee.)

Mr. Antosh alleged in his administrative complaint that these four contributions must be aggregated for the Lantos Committee's 1982 primary election campaign, totalling $8,600, or an excessive combined contribution by EPEC/IUOE and SELFEC of $3,600.[2]

The Commission, however, concluded that $3,100 of the contributions were not actually attributable to the 1982 primary campaign, and therefore the contributions exceeded the limit by only $500 instead of $3,600. The Lantos Committee had submitted a response to the administrative complaint indicating that the 1981 contributions of $600 and $2,500 "had been specifically solicited by the Lantos Committee in the course of a sustained effort to raise the funds necessary to retire a substantial 1980 general campaign debt." The Lantos Committee supported this contention with an affidavit from Tom Lantos. Thus, the Commission concluded that the Lantos Committee had correctly reported these two contributions as attributable to the 1980 campaign deficit, and that EPEC/IUOE had erroneously reported these contributions as being for the 1982 primary election campaign.[3]

After taking into account these corrections, based on sworn testimony before the Commission, the general counsel determined that the $3,600 in excess contributions alleged in Antosh's administrative complaint was reduced to $500. The Commission followed the recommendation of the general counsel that "[d]ue to the small amount in question," the Commission should find reason to believe that the respondents had violated the Act, but take no further action. Pursuant to 2 U.S.C. § 437g(a)(2), the Commission notified the

---

**2.** The following table sets forth the contributor, the amount, and the date for each contribution, as well as how the respondents designated the contribution:

| Contributor | Amount | Date | Election Reported By Contributor | Election Reported By Recipient |
|---|---|---|---|---|
| EPEC/IUOE | $600 | 5–6–81 | Primary | General '80 Deficit |
| EPEC/IUOE | 2,500 | 6–22–81 | Primary | General '80 Deficit |
| EPEC/IUOE | 500 | 2–9–82 | Primary | Primary |
| SELFEC | 5,000 | 6–7–82 | Primary | Primary |
| Total | $8,600 | | | |

---

**3.** The Commission rejected the argument advanced by the respondents that the June 1982 $5,000 in kind contribution was made primarily for the 1982 general election, even though both committees reported it as having been made for the primary campaign. The First General Counsel's Report concluded that the in kind contribution was made during the primary campaign, and cannot "extend in time to the date of the ultimate use of the campaign material."

respondents and Mr. Antosh of its final action on MUR 1719. The letters to the respondents, dated August 6, 1984, notified them of the $500 violations, and indicated that the Commission's file would become public in thirty days. Thus, it seems that it is now a matter of public record that the Commission had reason to believe that the respondents had committed violations of the Act involving only $500.

There is, however, a major problem in the Commission's treatment of this matter. Although the Commission received evidence indicating that, due to the improper designation of the use of the contributed funds, the alleged violations only involved $500, the Commission apparently ignored persuasive evidence in the administrative record that the violations in fact involved the entire $3,600. The Lantos Committee had filed a 1980 Year-end and 1981 Mid-year reports with the FEC. Those public documents establish that the Lantos Committee's 1980 general election debt had been paid off and extinguished as of April 13, 1981.[4] On that date the Lantos Committee paid off the remaining $5,000 owed to Lantos.

Because these documents reflect that the Lantos Committee's 1980 general election debt was extinguished by April 13, 1981, (but see footnote 4), neither the $600 May 6, 1981 contribution nor the $2,500 June 22, 1981 contribution could have been designated for reducing that debt. This is so despite Lantos's affidavit to the contrary. The veracity of this documented information is strengthened by the FEC's refusal to deny this observation, which the plaintiff included in his memorandum in support of his motion for summary judgment. Thus, it appears that the Commission erred.

 This Court has stated that the Commission "must take into consideration all available information concerning the alleged wrongdoing." *In re Federal Elec-*

*tion Campaign Act Litigation,* 474 F.Supp. 1044, 1046 (D.D.C.1979). Further, "a consideration of all available materials is vital to a rational review of Commission decisions." *Id. See also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (the agency's decision must be "based on a consideration of the relevant factors"). Although the Court applies the deferential arbitrary and capricious standard, the Court is not required "to accept 'meekly administrative pronouncements clearly at variance with established facts.'" *Braniff Airways, Inc. v. Civil Aeronautics Board,* 379 F.2d 453, 463 (D.C.Cir.1967) (quoting *NLRB v. Morganton Full Fashioned Hosiery Co.,* 241 F.2d 913, 916 (4th Cir.1957).

 In this case, the Commission's dismissal was solely based on the General Counsel's First Report. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 38, n. 19, 102 S.Ct. 38, 45 n. 19, 70 L.Ed.2d 23 (1981). That report urged dismissal based upon a misinterpretation of the facts. Significantly, the Commission has made public the dismissal and the reasons therefor. Those reasons, now public, indicate that the Commission dismissed MUR 1719 because it only involved violations of $500. The public has been kept in the dark because the violations in fact appear to involve considerably more money, and are thus more egregious than the Commission realized. For these reasons, the Commission's dismissal of MUR 1719 was arbitrary and capricious and, thus, contrary to law. *See* 2 U.S.C. § 437g(a)(8).

## CONCLUSION

It is clear that the Commission has erred in concluding that there was merely a $500 violation of the Act. The persuasive, indeed undisputed, evidence in the record

---

**4.** Although the date on the FEC's microfilm record appears to be April 13, 1981, due to the poor quality of the microfilm reproduction before the Court, it is possible that the date could have been May 13 or June 13, 1981. Even if the

debt was extinguished as late as June 13, 1981, the $2,500 contribution made by EPEC/IUOE on June 22 would still have been made after the Lantos Committee completely paid off its debt.

compels the conclusion that this case involved a violation of at least $2,500, and more likely $3,600. (See footnote 4, *supra*, p. 855) The commission simply ignored this evidence.

In these days of public revenues and expenditures reaching into multi-billion dollar figures, a violation of $500, and even one of $3,600, may sound small by comparison. While these amounts may not seem large to the Commission, they surely would to the vast majority of the American people. Most political candidates, particularly non-incumbents, would consider $500 a substantial sum of money. This Court, and the Commission, cannot lose sight of the most recent national election, of November 6, 1984, where it was patently obvious that many candidates won and lost by less than a very few votes. Any political candidate involved in such a race would greatly welcome a $500 contribution. It is definitely arbitrary and capricious for this Commission, charged with enforcing this Act designed to protect the integrity of federal elections, to give short shrift to a complaint by labelling the amount herein involved so miniscule as to warrant no action.

The Commission claims that it has limited resources. *See generally Rockford League of Women Voters v. United States Nuclear Regulatory Commission*, 679 F.2d 1218, 1222 (7th Cir.1982). If the Commission does not have the resources to pursue violations of $500 or $3,600, it should so advise the Congress. Or Congress, in the exercise of its oversight responsibilities, 2 U.S.C. § 437c(b)(2), should

do something about the matter. Perhaps then any group's sacred exercise of the right and privilege of franchise will not be in vain.

The Court fearfully imagines the state of this nation's election laws if they did not grant private citizens, such as Mr. Antosh, standing to file complaints, and to have them decided promptly and properly. 2 U.S.C. § 437g. If the enforcement of these laws rested entirely within the prosecutorial discretion of this Commission [5], incidents such as this might go unnoticed. The Court from other cases before it notes substantial regulatory lag in FEC proceedings. *See generally Johnson v. Secretary, Department of Health and Human Services*, 587 F.Supp. 1117 (D.D.C.1984). The Court is aware of a matter before Judge Oberdorfer with which the Commission has toyed for over two years with apparently no legitimate excuse.[6] *See Rose v. Federal Election Commission*, No. 84–2278 (D.D.C. 1984) (Oberdorfer, J.). Certainly cases such as the one presently before this member of the Court do nothing to promote public confidence in the electoral process and its integrity.

In sum, in the present case, it is clear to the Court that there is no basis in this record not to find a violation of the applicable sections of the Act. The Commission's dismissal of the complaint was contrary to law. Having declared that the Commission has acted contrary to law, the Court now "may direct the Commission to conform with such declaration within 30 days." [7] 2 U.S.C. § 437g(a)(8)(C). Accordingly, the

---

5. While the Commission is vested with some prosecutorial discretion, *In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1044, 1046 (D.D.C.1979), its actions cannot escape review. Section 437g(a)(8)(C) of the Act empowers the Court to declare the Commission's dismissal of a complaint to be contrary to law. Clearly this is case where the Commission has abused its discretion.

6. The egregiousness of the Commission's delay is compounded by the Act's sweeping secrecy provisions. *See* 2 U.S.C. §§ 437g(a)(4)(B), 437g(a)(12). While the Court does not suggest that an innocent person should have his name scrawled across public documents on baseless

charges, the Act's blanket of confidentiality raises serious constitutional questions involving First Amendment values and the public's right to know. In general, a lawsuit is the public's business, and, therefore, with the exception noted above, for at most a very short time, should be conducted in public. The Court invites the Congress and the Commission to reconsider these provisions.

7. If the Commission does not conform with the Court's declaration within 30 days, the plaintiff may bring suit directly against the respondents for the violations alleged in the administrative complaint. 2 U.S.C. § 437g(a)(8).

Court, as required by the aforesaid statute, remands this case to the Federal Election Commission for proceedings consistent with this Opinion.